**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THOMAS J. RAPAK, individually and on behalf of himself and all other persons similarly situated,<br><br>      Plaintiff,<br>  vs.<br><br>MARRIOTT INTERNATIONAL INC., and STARWOOD HOTELS & RESORTS WORLDWIDE LLC,<br><br>      Defendants. | **Case No. _____**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>December 7, 2018 |

   Plaintiff, Thomas J. Rapak ("Plaintiff"), by and through his undersigned counsel, brings this Class Action Complaint against Defendants Marriott International Inc. and Starwood Hotels & Resorts Worldwide, LLC (collectively as "Defendants" or "Marriott"), individually and on behalf of all others similarly situated, and alleged as follows, upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief.

## **INTRODUCTION**

   1.  Plaintiff brings this class action on behalf of a class of persons who have suffered, and continue to suffer, financial losses and increased data security risks as a direct result of Defendants' failure to safeguard and protect its customers' highly sensitive personally identifiable information ("PII") including, but not limited to: names, mailing addresses, phone numbers, email addresses, passport numbers, Starwood Preferred Guest ("SPG") account information, date of birth, gender, arrival and departure information, reservation dates and communication preferences, and payment card data, including, but not limited to, credit and

1

debit card numbers, primary account numbers, card verification value numbers, expiration dates, and zip codes.

2.      On November 30, 2018, Marriott issued a press release announcing that since 2014 unauthorized third parties had access to Marriott's Starwood Guest Reservation database ("SGR Database"), and that up to 500 million guests could be affected by the breach.[1]

3.      The SGR Database stores highly sensitive customer information, including some combination of the following PII—mailing addresses, phone numbers, email addresses, passport numbers, SPG account information, dates of birth, gender, arrival and departure information, reservation dates, communication preferences, and payment card data, including, but not limited to, credit and debit card numbers, primary account numbers, card verification value numbers, expiration dates, and zip codes.

4.      When customers book a hotel room, they entrust Marriott with the various forms of PII that Marriott requires them to divulge to reserve a room. Plaintiff, like millions of others, provided his information to Marriott based on his reasonable expectation that Marriott would take appropriate steps to safeguard his PII from being exposed to or accessed by other parties.

5.      Because their PII has been compromised as a result of the data breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of identity theft-related harm.

6.      As a result of Marriott's conduct, Plaintiff and Class Members will be required to undertake expensive and time-consuming efforts to mitigate the actual and potential impact of the data breach on their lives by, among other things, placing "freezes" and "alerts" with

---

[1] Kroll, *Starwood Guest Reservation Database Security Incident*, https://answers.kroll.com/.

credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

7.      Furthermore, Plaintiff and Class Members will be required to purchase credit and identity monitoring services to alert them to potential misappropriation of their identity and to combat risk of further identity theft. At a minimum, Plaintiff and Class Members have suffered compensable damages because they will be forced to incur the cost of a monitoring service which is a reasonable and necessary step to prevent and mitigate future loss.

## THE PARTIES

8.      Plaintiff Thomas J. Rapak is a resident of Montgomery County, Pennsylvania. Plaintiff Rapak maintained an SPG account and gave his PII to Marriott in connection with securing hotel reservations at Marriott properties during the class period. As such, his PII was stored on the SGR Database during the class period. Plaintiff Rapak became aware of the Data Breach through news reports on or about November 30, 2018. Prior to September 2018, Plaintiff stayed at one or more of Defendants' hotels that utilized the SGR Database.

9.      Plaintiff has taken great steps to protect his PII, including shredding documents containing PII, regularly monitoring his credit reports, and entrusting his PII only to entities that represent they follow industry-standard guidelines for the protection and storage of PII. Exposure of Plaintiff's PII as a result of the Data Breach has placed him at imminent, immediate, and continuing risk of further identity theft-related harm.

10.      Defendant Marriott International Inc. ("MII") is a publicly traded Delaware corporation having its principal executive offices located at 10400 Fernwood Road, Bethesda, MD 20817.

3

11.     Defendant Starwood Hotels & Resorts Worldwide, LLC ("Starwood") is an indirect, wholly-owned subsidiary of MII. On September 23, 2016, Marriott completed the acquisition of Starwood Hotels & Resorts Worldwide, LLC, formerly known as Starwood Hotels & Resorts Worldwide, Inc.

12.     MII and Starwood are collectively referred to as "Marriott" or "Defendants."

13.     Marriott owns and manages hotel properties located in various states throughout the United States, including numerous properties in this District. Marriott has more than 6,700 properties in 127 countries and territories, under 30 hotel brands, including 3,150 lodging properties located in the United States. Upon information and belief, Marriott collects, stores, and maintains the PII of all guests who stay at Marriott properties.

14.     One of those brands is the "Starwood" chain of hotels. Marriott acquired Starwood Hotels & Resorts Worldwide, Inc. in 2016 to create the world's largest hotel chain. Starwood now accounts for about a third of Marriott's total brands. Marriott has acknowledged that Starwood's guest loyalty program – *Starwood Preferred Guest ("SPG")* – was a "central, strategic rationale for the transaction" because the program has loyal members who generally have higher incomes and spend many nights on the road.

15.     Starwood brands effected by the Marriott Data Breach include: *W Hotels, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Méridien Hotels & Resorts, Four Points by Sheraton and Design Hotels*, and *Starwood branded timeshare properties*.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 Class Members, and at least

one class member is a citizen of a state different from Defendants and is a citizen of a foreign state. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Defendant Starwood as it maintains its principal executive offices in Stamford, Connecticut, is registered to conduct business in Connecticut, regularly conducts business in Connecticut, and has sufficient minimum contacts in Connecticut. Defendants intentionally avail themselves of this jurisdiction by conducting Starwood's corporate operations here and promoting, selling, and marketing Starwood's services to resident Connecticut consumers and entities.

18.     Venue is proper in this District under 28 U.S.C. §1391(a) because Starwood's principal place of business is in Connecticut and a substantial part of the events, acts, and omissions giving rise to the claims of the Plaintiff occurred in this District.

## FACTUAL ALLEGATIONS

### A. Marriott's Data Breach

19.     On September 8, 2018, Marriott first learned of an unauthorized attempt to access its SGR Database. Marriott's investigation "determined that there was unauthorized access to the database, which contained guest information relating to reservations at Starwood properties on or before September 10, 2018."

20.     Nearly three months later, on November 30, 2018, Marriott publicly announced that this previously unreported attack on its SGR Database had exposed the PII of 500 million users (the "Data Breach"). During Marriott's investigation, Marriott learned that nefarious actors had access to the SGR Database since 2014—unfettered and allegedly undetected access for four years. Plaintiff is one of those affected users.

21.     Of the 500 million guests who could have been affected by the Data Breach,

approximately 327 million of the affected guests include some combination of their name, mailing address, phone number, email address, passport number, SPG account information, date of birth, gender, arrival and departure information, reservation dates, communication preferences, and other PII. For "some" of these affected guests, additional information, such as payment card numbers and payment card expiration dates, also included as PII.

22.     Despite Marriott's use of AES-128 encryption, the payment card numbers and payment card expiration dates may have been compromised, because the encryption method requires two components for decryption, and both may have been taken.

23.     For the remaining approximately 173 million of the affected guests, the information was limited to name, mailing address, email address, and "other information," that Marriott has not expanded upon or provided more details, leaving consumers without full knowledge of the extent of the breach of their PII.

24.     Despite being on notice of numerous publicly reported similar data breaches and security lapses in the hospitality industry effecting competitors such as *Hilton, Hyatt, Kimpton* and *Omni*, Marriott still lacks the safeguards and protections for users' PII, and that information remains at risk today and into the future, until Marriott is compelled to secure the PII stored on millions of effected customers.

**B.  The Data Breach Caused Harm to Plaintiff and Class Members**

25.     PII such as effected name, mailing address, phone number, email address, passport number, SPG account information, date of birth, gender, arrival and departure information, and payment card data is highly coveted data and a frequent target of hackers.

26.     Despite well-publicized litigation and frequent public announcements of data breaches, especially in the hospitality sector, Marriott maintained an insufficient and

inadequate system to protect the PII of Plaintiff and Class Members.

27.     Payment card data such as credit or debit card information is highly valuable to hackers. Identity thieves use stolen PII for a variety of financial fraud related crimes. Credit and debit card information that is stolen from the point of sale is known as "dumps." Credit and debit card dumps can be sold in the cybercrime underground for a retail value of about $20 apiece.  This information can also be used to clone a debit or credit card.

28.     Marriott failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiff and Class Members.

29.     Federal and State governments have likewise established security standards and issued recommendations to temper data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices, including *Protecting Personal Information: A Guide for Business*.[2]

30.     Under the FTC guidelines, businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

31.     The FTC recommends that companies not maintain cardholder information longer

---

[2] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*.

than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

32.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Marriott's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

33.     Here, Marriott was at all times fully aware of its obligation to protect the personal and financial data of its guests and customers because of its participation in the storage of PII, storage of payment card data, and interactions with payment card processing networks.

34.     Marriott was also aware of the significant repercussions if it failed to do so because Marriott collected payment card data from millions of guests and customers daily and they knew that this data, if hacked, would result in injury to consumers, including Plaintiff and Class Members.

35.     Despite understanding the consequences of inadequate data security, Marriott failed to take appropriate protective measures to protect and secure guests' and customers' PII, including Plaintiff and Class Members.

36.     Despite understanding the consequences of inadequate data security, Marriott operated computer network systems with outdated operating systems and software; failed to

enable point-to-point and end-to-end encryption; failed to detect intrusions dating back as far as 2014; and, failed to take other measures necessary to protect its data network.

37.     In the case of a data breach, merely reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[3]

38.     A victim whose PII has been stolen and compromised may not see the full extent of identity theft or fraud for years after the initial breach. It may take some time for the victim to become aware of the theft. In addition, a victim may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

39.     According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014. Among identity theft victims, existing bank or credit card accounts were the most common types of misused information.[4]

40.     Without detailed disclosure to Marriott's guests and customers, consumers, including Plaintiff and Class Members, were unknowingly and unwittingly left exposed to continued misuse and ongoing risk of misuse of their PII for months, or even years, without being able to take necessary precautions to prevent imminent harm.

41.     As a result of the Data Breach, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

42.     Plaintiff and Class Members are also subject to a higher risk of phishing where

---

[3] *See* "Victims of Identity Theft," U.S. Department of Justice, Dec. 2013.
[4] *Id.*

hackers exploit information they already obtained to get even more PII. Plaintiff and Class Members are presently incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

43.     The exposure of Plaintiff's and Class Members' PII to unauthorized third parties resulted from the following three specific actions and/or inactions by Marriott.

44.     First, Marriott required that Plaintiff and Class Members provide their PII to Marriott in order to book a hotel room.

45.     Second, unbeknownst to Plaintiff and Class Members, Marriott enabled their PII to be disclosed to unauthorized third parties by not having adequate safeguards.

46.     Third, Marriott was entrusted with its customers' PII without ensuring that it had in place a reasonable and adequate system of security procedures and practices to protect the PII of Plaintiff and Class Members from being compromised and exposed to third parties.

47.     The exposure of Plaintiff's and Class Members' PII to unauthorized third parties was a direct and proximate result of Marriott's failure to properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure as well as Marriott's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII in order to protect such PII against reasonably foreseeable threats to the security of such information.

48.     Plaintiff's and Class Members' PII is private and sensitive in nature and was inadequately protected by Marriott. Marriott did not obtain Plaintiff's and Class Members'

knowing, voluntary, and informed consent to disclose their PII to other third parties as required by applicable law and industry standards.

49.     As a Fortune 200 company with over 6,700 properties under management, Marriott had the sophisticated financial and technical resources to prevent such a breach. However, Marriott has neglected to adequately invest in data security, despite the growing number of data intrusions and several years of well-publicized retail, hospitality, and e-commerce industry data breaches.

50.     Had Marriott remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by the FTC and experts in the field, Marriott would have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff and Class Members' confidential PII.

51.     As a direct and proximate result of Marriott's wrongful actions and inaction, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Marriott Data Breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

52.     Marriott's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.  The improper disclosure, compromising and theft of their PII;

b.  Unauthorized charges on their debit and credit card accounts;

c.  The imminent and impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized parties and misused via the sale of Plaintiff's and Class Members' information on the internet black market and dark web;

d.  The untimely and inadequate notification of the Data Breach;

e.  Loss of privacy;

f.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g.  Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

h.  Loss of use of, and access to, their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations;

i.  Overpayments to Marriott for bookings and purchases during the period of the subject Data Breach in that implied in the price paid for such booking by Plaintiff and Class Members to Marriott was the promise that some amount of the booking charge would be applied to the costs of implementing reasonable and adequate safeguards and security measures that would protect customers' PII, which Marriott did not implement, and, as a result, Plaintiff and Class Members did not receive what they paid for and were overcharged by Marriott; and

j.  The loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

53.     While Plaintiff's and Class Members' PII has been stolen, Marriott continues to hold Plaintiff's and Class Members' PII. Since Marriott has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiff and Class Members have

12

an undeniable interest in ensuring that their PII is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

54.     In response to the Data Breach Marriott has offered one year of free PII monitoring through enrollment in "WebWatcher." As previously alleged, Plaintiff's and Class Members' PII may exist on the dark web for months, or even years, before it is purchased and used by hackers. With only one year of monitoring, and no form of insurance or other protection, Plaintiff and Class Members remain unprotected from the real and long-term threats against their PII. Therefore, the "monitoring" services are inadequate, and Plaintiff and Class Members have a real and cognizable interest in obtaining equitable relief, in addition to the monetary relief requested herein.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all others similarly situated, as representative of the following nationwide class:

> All persons residing in the United States who provided PII to Defendants and whose PII was accessed, compromised, or stolen as a result of the Data Breach disclosed by Defendants on November 30, 2018.

56.     The Nationwide Class is sometimes referred to herein as the "Class."

57.     Excluded from the Class are affiliates, predecessors, successors, officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons. Also excluded are any trial judge who may preside over this action and their law clerks, court personnel and their family members, and any juror assigned to this action. Plaintiff reserves the right to amend the Class definition if discovery and/or further investigation reveal that it should be modified.

58.     The members of the Class are so *numerous* that the joinder of all members of

the Class in single action is impractical. While the exact number of Class Members is unknown to Plaintiff at this time, Marriott has acknowledged that its customers' PII was compromised for hotel bookings that were made during a period since at least 2014. Marriott said that "approximately 500 million guests" accounts were affected. Therefore, it stands to reason that the number of Class Members is likely in the tens if not hundreds of millions. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as reservation receipts and confirmations

59.     There are *common questions of law and fact* to the Class Members, which *predominate* over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether Defendants owed a duty to Plaintiff and Class Members to safeguard and protect the security of their PII;

b.  Whether Defendants failed to use reasonable care and commercially reasonable methods to secure and safeguard Plaintiff's and Class Members' PII;

c.  Whether Defendants had a duty to promptly notify Plaintiff and Class Members that their PII was, or potentially could be, compromised;

d.  Whether Defendants notified Plaintiff and Class Members, in the most expedient time possible and without unreasonable delay, that their PII had been compromised;

e.  Whether Defendants have a (implicit and/or explicit) contractual obligation to Plaintiff and Class Members to implement and maintain reasonable security measures to safeguard Plaintiff's and Class Members' PII;

f.  Whether Defendants breached its (implicit and/or explicit) contractual obligation to implement and maintain reasonable security measures to safeguard Plaintiff's and Class Members' PII;

g.  Whether Defendants breached the covenant of good faith and fair dealing implied in its contracts with Plaintiff and Class Members;

h.  Whether Defendants properly implemented its purported security measures to protect Plaintiff's and Class Members' PII from unauthorized capture, dissemination and misuse;

i.   Whether Defendants have and have been unjustly enriched by its delayed notification to subscribers regarding the Data Breach;

j.   The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled;

k.   Which security procedures and which data-breach notification procedures Defendants should be required to implement as part of any injunctive relief ordered by the Court; and;

l.   Whether Plaintiff and Class Members are entitled to compensation, monetary damages, equitable relief and injunctive relief, and, if so, the nature and amount of such relief.

60.   Plaintiff's claims are *typical* of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was misused, improperly disclosed, and/or negligently entrusted to a third party by Defendants.

61.   Plaintiff will fairly and *adequately represent* and protect the interests of the Class Members. Plaintiff has retained competent counsel experienced in litigation of complex class actions, including consumer class actions. Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of all of the other Class Members, and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Class Members will be fairly and adequately represented by Plaintiff and his counsel.

62.   A class action is *superior* to other available methods for the fair and efficient adjudication of this controversy. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class Member

15

are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

63.     Class certification is also appropriate under FED. R. CIV. P. 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## CLAIMS FOR RELIEF

### Count I
### (Negligence)

64.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in each and every paragraph above, as though fully stated herein.

65.     Marriott owed a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

66.     This duty included, among other things, designing, maintaining, and testing Marriott's security systems to ensure that Plaintiff's and Class Members' PII was adequately secured and protected. Marriott further had a duty to implement processes that would detect a breach of their security system in a timely manner.

67.     Marriott also had a duty to timely disclose to Plaintiff and Class Members that their PII had been or was reasonably believed to have been compromised. Timely disclosure was appropriate so that, among other things, Plaintiff and Class Members could take appropriate measures to cancel or change usernames, pin numbers, and passwords on compromised accounts, to begin monitoring their accounts for unauthorized access, to contact

16

the credit bureaus to request freezes or place alerts and take all other appropriate precautions.

68.    Marriott breached is duty to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information; allowing unauthorized access to Plaintiff's and Class Members' PII stored by Marriott; and failing to recognize in a timely manner the breach.

69.    Marriott breached its duty to timely disclose that Plaintiff's and Class Members' PII had been, or was reasonably believed to have been, stolen or compromised.

70.    Marriott's failure to comply with industry regulations and the delay between the date of intrusion and the date Marriott informed customers of the Data Breach further evidence Marriott's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII.

71.    But for Marriott's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised, stolen, and viewed by unauthorized persons.

72.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Marriott's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII. Marriott knew or should have known that their systems and technologies for processing and securing Plaintiff's and Class Members' PII had security vulnerabilities.

73.    As a result of Marriott's negligence, Plaintiff and Class Members incurred damages including, but not limited to, out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud; credit, debit, and financial monitoring to prevent

and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of Marriott's security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; the cost of and time spent replacing credit cards and debit cards and reconfiguring automatic payment programs with other merchants related to the compromised cards; and irrecoverable financial losses due to unauthorized charges on the credit/debit cards of Marriott's customers by identity thieves who wrongfully gained access to the PII of Plaintiff and Class Members.

## Count II
### (Negligence *Per Se*)

74.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in each and every paragraph above, as though fully stated herein

75.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as Marriott's of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Marriott's duty.

76.     Marriott violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and not complying with industry standards. Marriott's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach at the world's largest hotel chain.

77.     Marriott's violation of Section 5 of the FTC Act constitutes negligence *per se*.

78.     Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

79.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class.

80.     As a direct and proximate result of Marriott's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## Count III
### (Breach of Contract)

81.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in each and every paragraph above, as though fully stated herein.

82.     Marriott solicited and invited Plaintiff and Class Members to book hotel rooms at one of Marriott's hotels. Plaintiff and Class Members accepted Marriott's offers and booked hotel rooms at one of Marriott's hotels.

83.     Marriott's privacy policies constitute an agreement between Marriott and Plaintiff and Class Members. Furthermore, Marriott's privacy statement represents that it "seeks to use reasonable organizational, technical and administrative measures to protect Personal Data."

84.     Plaintiff and Class Members fully performed their obligations under their agreements with Marriott.

85.     Marriott breached their agreement with Plaintiff and Class Members to protect their PII by (a) failing to implement security measures designed to prevent this attack, (b) failing to employ security protocols to detect the unauthorized network activity, and (c) failing

19

to maintain basic security measures such as complex data encryption so that if data were accessed or stolen it would be unreadable.

86.     Plaintiff and Class Members have been damaged by Marriott's breach of their contractual obligations, including, but not limited to, out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud; credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of Marriott's security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; the cost of and time spent replacing credit cards and debit cards and reconfiguring automatic payment programs with other merchants related to the compromised cards; and irrecoverable financial losses due to unauthorized charges on the credit/debit cards of Marriott's customers by identity thieves who wrongfully gained access to the PII of Plaintiff and Class Members.

## Count IV
### (Breach of Implied Contract)

87.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in each and every paragraph above, as though fully stated herein.

88.     When Plaintiff and Class Members paid money and provided their PII to Marriott in exchange for services, they entered into implied contracts with Marriott pursuant to which Marriott agreed to safeguard and protect such information and to timely and accurately notify them if their data had been breached and compromised.

89.     Marriott solicited and invited prospective hotel guests and other consumers to provide their PII as part of its regular business practices. These individuals accepted Marriott's offers and provided their PII to Marriott.

90.     In entering into such implied contracts, Plaintiff and Class Members assumed

that Marriott's data security practices and policies were reasonable and consistent with industry standards, and that Marriott would use part of the funds received from Plaintiff and Class Members to pay for adequate and reasonable data security practices.

91.     Plaintiff and Class Members would not have provided and entrusted their PII to Marriott in the absence of the implied contract between them and Marriott to keep the information secure.

92.     Plaintiff and Class Members fully performed their obligations under the implied contracts with Marriott.

93.     Marriott breached their implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII and by failing to provide timely and accurate notice that their PII was compromised as a result of a data breach.

94.     As a direct and proximate result of Marriott's breaches of their implied contracts, Plaintiff and Class Members sustained actual losses and damages, including, but not limited to, out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud; credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of Marriott's security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; the cost of and time spent replacing credit cards and debit cards and reconfiguring automatic payment programs with other merchants related to the compromised cards; and irrecoverable financial losses due to unauthorized charges on the credit/debit cards of Marriott's customers by identity thieves who wrongfully gained access to the PII of Plaintiff and Class Members.

### Count V
### (Unjust Enrichment)

95.     Plaintiff repeats, realleges, and incorporates by reference the allegations

contained in each and every paragraph above, as though fully stated herein.

96.     By providing their personal and private information to Marriott, Plaintiff and Class Members have conferred a monetary benefit on Marriott.

97.     Although Marriott became aware of the Data Breach in September 8, 2018, Marriott did not notify its subscribers of the extent and nature of the compromised PII affected by the breach until November 30, 2018. Upon information and belief, the full extent of the security breach has still not been fully disclosed.

98.     Marriott appreciates and/or has knowledge of such benefit.

99.     Marriott has retained the portion of revenue generated from Plaintiff's and Class Members' PII despite its failure to adequately protect such information.

100.    Marriott has also retained the portion of revenue generated from its delay in notifying Plaintiff and Class Members about the Data Breach.

101.    As a result, Marriott has been unjustly enriched at the expense of Plaintiff and Class Members.

102.    Under principles of equity and good conscience, Marriott should not be permitted to retain such revenues at the expense of Plaintiff and Class Members.

103.    Accordingly, Plaintiff and Class Members are entitled to full disgorgement and restitution of the amounts Marriott has been wrongfully enriched due to its wrongful actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

A. Certify the Nationwide Class pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and order that notice be provided to all Class Members;

B. Designate Plaintiff as representative of the Class and the undersigned counsel, LOWEY

DANNENBERG, P.C. as Class Counsel;

C.  Award Plaintiff and the Class compensatory damages in an amount to be determined by the Court and punitive damages to punish Defendants' egregious conduct, described herein, and to deter Defendants and others from engaging in similar conduct;

D.  Award Plaintiff and the Class injunctive relief, as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices set forth herein, ordering Defendants to fully disclose the extent and nature of the security breach and theft, and ordering Defendants to pay for not less than three years of identity theft and credit card monitoring services for Plaintiff and the Class;

E.  Award Plaintiff and the Class statutory interest and penalties;

F.  Award Plaintiff and the Class their costs, prejudgment interest, and attorneys' fees; and

G.  Grant such other relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

December 7, 2018

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**
By: /s/ Johnathan P. Seredynski
_____
Vincent Briganti (*pro hac vice* forthcoming)
Christian Levis (*pro hac vice* forthcoming)
Johnathan P. Seredynski (ct30412)
Anthony M. Christina (*pro hac vice* forthcoming)
44 South Broadway, Suite 1100
White Plains, NY 10601-2310
Telephone:  914-997-0500
Email:  vbriganti@lowey.com
        clevis@lowey.com
        jseredynski@lowey.com
        achristina@lowey.com

*Attorneys for Plaintiff Thomas J. Rapak*

23